IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALTON JERROLD SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV161 |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Alton Jerrold Smith ("Plaintiff") brought this action pursuant to Section

1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain

judicial review of a final decision of the Commissioner of Social Security denying his claim for

Supplemental Security Income under Title XVI of the Act. The parties have filed cross-

motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed his application for Supplemental Security Income on June 3,

2016, alleging disability as of June 1, 2012. (Tr. at 19, 213-21.)[1] His application was denied

initially (Tr. at 97-118, 145-49), and that decision was upheld upon reconsideration (Tr. at 119-

44, 157-68). Thereafter, Plaintiff requested an administrative hearing de novo before an

Administrative Law Judge ("ALJ"). (Tr. at 169-71.) Plaintiff appeared at the subsequent

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

1

hearing on March 27, 2018, along with his non-attorney representative and an impartial vocational expert, the latter of whom testified by telephone. (Tr. at 19, 37-73.) Plaintiff had previously filed a claim that was denied on March 6, 2015, and at the hearing with the ALJ on March 27, 2018, Plaintiff's representative confirmed that Plaintiff was not seeking to reopen that prior decision and that the protective filing date for the present claim was June 3, 2016. (Tr. at 55.)[2] The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from June 3, 2016 to the date of the decision (Tr. at 19-31), and on December 19, 2019, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

---

[2] Plaintiff's prior claim was for both Supplemental Security Income and Disability Insurance Benefits. Those claims came before a different ALJ for a hearing on December 23, 2014, and the claims were denied in a decision dated March 6, 2015. Plaintiff did not appeal that determination and instead filed the present application for Supplemental Security Income on June 3, 2016.

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

3

to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.

Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since June 3, 2016, the application date. Plaintiff therefore met his burden at step

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff

suffered from the following severe impairments:

> seizure disorder, hypertension, arthritis, gastrointestinal esophageal reflux
> disease, atrial fibrillation/heart murmur, degenerative disc disease, mood
> disorder/bipolar disorder with psychosis, substance abuse disorder/
> dependence, personality disorder, generalized anxiety disorder, and borderline
> intellectual functioning[.]

(Tr. at 22.) The ALJ found at step three that none of these impairments, individually or in

combination, met or equaled a disability listing. (Tr. at 22-25.) Therefore, the ALJ assessed

Plaintiff's RFC and determined that he could perform medium work with the following,

additional limitations:

> [H]e is limited to no exposure to workplace hazards including heights,
> dangerous machinery, ladders, ropes or scaffolds. [Plaintiff] is limited to no
> exposure to extreme heat or cold. He is limited to simple, routine, repetitive
> tasks and simple work-related decisions, but not at a production rate pace. He
> is limited to only occasional contact with supervisors and coworkers, but no
> interaction with the public. [Plaintiff] is limited to only occasional[] changes in
> the workplace setting and he should not operate motor vehicles.

(Tr. at 25.) Based on this determination and the testimony of a vocational expert, the ALJ

determined at step four of the analysis that Plaintiff could not return to any of his past relevant

work. (Tr. at 29.) However, the ALJ found at step five that, given Plaintiff's age, education,

work experience, RFC, and the testimony of the vocational expert as to these factors, he could

perform other jobs available in significant numbers in the national economy. (Tr. at 30-31.)

Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 31.)

Plaintiff now challenges the ALJ's mental RFC assessment in four respects.

Specifically, he contends that the ALJ (1) failed to properly evaluate all of the mental health

evidence, (2) "present[ed] an inaccurate and incomplete picture of [Plaintiff's] abilities," (3)

6

failed to adequately explain his findings in accordance with <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015), and (4) erred in evaluating the statements of Plaintiff's mother. (Pl.'s Br. [Doc. #12] at i.) After a thorough review of the record, the Court finds that none of Plaintiff's contentions merit remand.

A. Evaluation of the Mental Health Evidence

Plaintiff first argues that the ALJ failed to consider all of the relevant mental health evidence of record when assessing Plaintiff's RFC. In particular, Plaintiff asserts that the ALJ neglected to properly address Plaintiff's inpatient psychiatric hospitalization in June 2015, his subsequent mental health treatment at Monarch and Family First Support Center, and the opinion evidence provided by Dr. Scott Schell and Ruth Hall, MSW, LCSW.

First as to the opinion evidence from Dr. Schell and Ms. Hall, Plaintiff faults the ALJ for failing to address or consider a February 2013 opinion of Plaintiff's counselor, Ms. Hall, and for failing to consider Plaintiff's September 2012 assessment by Dr. Schell. However, both of these pieces of evidence were part of the record on Plaintiff's prior claim for disability benefits, which was denied on March 6, 2015 (the "2015 denial"). The 2015 denial specifically addressed the opinions of Counselor Hall and Dr. Schell as follows:

> [I]n September 2012, consultative examiner, Scott Schell, M.D., evaluated the claimant, when the claimant reported having occasional crying spells, as well as a history of vague hallucinations. Dr. Schell wrote the claimant seemed inhibited and he downplayed the significance of his alcohol use. The claimant had a flattened and detached affect, but he was able to form a simple relationship with Dr. Schell and sustain concentration during the exam. He was oriented, and Dr. Schell noted the claimant's IQ was estimated within the 80 range, which is within the lower range. However, Dr. Schell reported there was no abnormality of judgment shown during the interview. Overall, he diagnosed alcohol abuse, bipolar disorder, and personality disorder. He assessed a Global Assessment of Functioning (GAF) score of 65 in the past year, but 38 at present. Little weight is given to that GAF score finding, as it is inconsistent with the primarily normal

7

mental status exam findings. Dr. Schell determined the claimant would be capable of performing unskilled work, but wrote his ability to perform such tasks, as well as his ability to form working relationships with others, and tolerate stress, is "adversely influenced" by his ongoing alcohol use and mental symptoms. Dr. Schell's opinions are vague overall, as he failed to define what he meant by "adverse," so they are given little weight.

. . . . [L]ater, his counselor, Ruth Hall, LCSW, completed a medical source statement questionnaire She indicated the claimant had marked and extreme limitations by her checked responses, which she emphasized was based on her initial intake assessment and not on any standardized testing. As she did not have a substantial treating relationship with the claimant at that time, and as she is not an acceptable medical source, little weight is given to her opinions (SSR 06-03p).

. . . . [Plaintiff] underwent a new initial mental health assessment in November 2014, and the examiner noted there were no abnormal thoughts, he was fully oriented, and he had intact attention and concentration. The exam notes show he had poor judgment and insight at that time, yet the examiner also wrote he had good understanding of his mental health needs. The claimant was diagnosed with schizophrenia, bipolar type, at that time and generalized anxiety. He was given a GAF score of 45, but, again, that low score is inconsistent with the overall objective findings, so it is given little weight. It was also an initial assessment and prior to substantial treatment.

Thus, the overall psychiatric evidence reflects the claimant has been hospitalized due to psychiatric symptoms at least once during the period in question, but he has sought minimal mental health treatment. When he takes medication, it is helpful, as he testified to during the hearing. In consideration of the psychiatric evidence, as well as the claimant's testimony, the undersigned finds the claimant is capable of performing work consistent with the mental residual functional capacity noted herein.

(Tr. at 86-87.) Plaintiff did not appeal that 2015 denial. Moreover, at the hearing before the ALJ in the present case, Plaintiff noted no intent or request to reopen that prior 2015 denial. (Tr. at 55.) In making the determination in the present case in 2018, the ALJ specifically noted that:

[O]ther prior opinions were exhibited, [but] they were all considered and included in the prior adjudication by Judge Willis as noted above and I find no basis to reopen that decision or consideration of the opinions therein.

8

(Tr. at 28.)  The ALJ also explained that:

> The claimant was found not disabled in a final decision by an ALJ at exhibit B1A. The prior ALJ decision considered most, but not all, of the claimant's symptoms. I find that there is new and material evidence related the claimant's condition. The claimant's degenerative disc disease causes additional limitations, which affect the claimant's ability to perform basic work activities. Accordingly, I afford the prior decision of ALJ only some weight pursuant to AR 00-1(4) and have added slight more restrictive limitations to the claimant balancing the new evidence with the prior findings.

(Tr. at 27.)  Thus, the ALJ in the present case specifically relied on the prior ALJ decision (except for additional limitations with regard to Plaintiff's degenerative disc disease), and with respect to opinion evidence considered in that prior decision, specifically relied on the evaluation of that evidence in the prior decision and found no basis to reopen that determination.  This is consistent with Social Security Administration Acquiescence Ruling 00-1(4), which implements Albright v. Comm'r, 174 F.3d 473 (4th Cir. 1999) in the Fourth Circuit.  Under AR00-1(4),

> where a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.
> . . . .
>
> In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

9

AR 00-1(4); see also Albright, 174 F.3d at 476 and n.4 (holding that a new claim should not be denied solely on the basis of a previously denied claim without evaluating potential changed circumstances, and noting that "the customary principles of preclusion apply with full force" when a claimant's "second or successive application seeks to relitigate a time period for which the claimant was previously found ineligible for benefits"). In this case, the ALJ properly considered and weighed the previous evaluation of Plaintiff's disability, and this is sufficient to allow the Court to understand the reasoning of the ALJ and to build a logical bridge to the ALJ's conclusions.

With respect to evidence of Plaintiff's 5-day psychiatric hospitalization in June 2015, that treatment occurred approximately a year before Plaintiff's June 2016 application date in the present case. Plaintiff faults the ALJ for failing to specifically address this evidence. However, the ALJ stated that he had considered all of the evidence in the record (Tr. at 20, 22, 25), and he specifically cited and considered Plaintiff's mental health treatment records, which included Plaintiff's treatment related to his hospital discharge on June 11, 2015 through the remainder of 2015 and 2016 and ultimately through the most recent 2018 record (Tr. at 27 (citing Tr. at 581-96, 611-36, 637-79, 680-96.)) Moreover, Eleanor Cruise, Ph.D, the State agency psychological consultant at the initial level in the present case, specifically discussed the details of Plaintiff's hospitalization and follow-up records, and the ALJ gave this opinion great weight. In particular, Dr. Cruise noted that Plaintiff's significantly increased symptoms at that time resulted from a month of non-compliance with his psychiatric medications, with a history of severe alcohol use. (Tr. at 107.) She further noted that Plaintiff's subsequent records, including a January 13, 2016 treatment note from Monarch, indicated that Plaintiff

had stopped using both alcohol and THC entirely. (Tr. at 107.) Although later notes indicated that Plaintiff continued to experience some audio-visual hallucinations, he generally reported that his medications were working well, and his mental status exams were otherwise within normal limits. (Tr. at 107, 129.) Based on their review of the records from the relevant time period, both State agency consultants concluded that Plaintiff "is able to concentrate/persist when he is taking medication as he is doing at this time. There are no documented periods of problems in this area lasting at least 12 months. He is abstaining from substance abuse as well." (Tr. at 113, 137-38.) The ALJ ultimately adopted the overall findings of the consultants in full, finding, in line with their opinions, that Plaintiff could perform simple, routine, repetitive tasks at a non-production pace; make simple, work-related decisions; maintain occasional contact with supervisors but no interaction with the public; and handle occasional changes in workplace setting. (See Tr. at 25, 27, 112-13, 137-38.)

Plaintiff's challenge regarding his psychiatric treatment at Monarch and Family First Support Center is equally unpersuasive. As an initial matter, no evidence from Family First pertains to the time period in question, as the most recent treatment records from that facility date to June 3, 2014. Although Plaintiff characterizes a GAF score of 43 at Family First as evidence that he continued to experience severe mental symptoms in 2016, the records cited date to 2012. (See Pl.'s Br. at 6-7 (citing Tr. at 512, 496).)

Regarding Plaintiff's treatment at Monarch, the State agency psychological consultants, Eleanor Cruise, Ph.D. and Mark Berkowitz, Psy.D, considered the records from Plaintiff's providers at that facility in finding Plaintiff limited to the tasks set out in his RFC assessment, and the ALJ gave those assessments great weight. (Tr. at 27, 105-115, 129-39.) Moreover, the

11

ALJ specifically cited the records in question in discussing Plaintiff's mental impairments. In particular, the ALJ cited records from Monarch in finding that "treatment includ[ing] medication and therapy . . . stabilized [Plaintiff's] mood," and "treatment notes indicate[d] that symptoms [were] effective[ly treated] with medications." (Tr. at 27)(citing Tr. at 581-96, 611-96). The cited records support these conclusions.[5] In addition, the ALJ found that Plaintiff "generally presented alert and cooperative with clear speech, intact thought processes, proper orientation, and intact memory" (Tr. at 27) (citing Tr. at 571, 611, 623, 625, 629, 631, 633, 635, 661, 686). The cited records support these conclusions. The ALJ further acknowledged that "depressed and anxious mood were noted on some examinations, but these were not noted to be marked or extreme in nature." (Tr. at 27.) The medical records support this assessment as well, with Monarch evaluations during the period at issue specifically assessing Plaintiff's mental impairments as "moderate." (Tr. at 660-61, 642-43.)

With regard to the underlying evidence supporting Plaintiff's mental limitations, the ALJ's decision further supports his determination by setting out Plaintiff's improvement in light of his increased medication compliance, consistent with the opinion of the state agency psychologists that he "does well when he takes his medication and abstains from alcohol

---

[5] For example, the cited records include notations that on proper medication Plaintiff was "less irritable, more tolerant of other people" (Tr. at 592), that the medication "helps – less moody" with a "goal to go back to work" (Tr. at 590), that when compliant with medication he "sleeps well; appetite good" (Tr. at 588), and that medications needed to be increased (Tr. at 586) but were then "working well" and he was "feeling better on meds. Sleeps well, appetite good. . . . feels less stressed." (Tr. at 581). State agency psychologist Dr. Berkowitz noted that: "As far as claimant's mental impairments are concerned, he has a history of schizoaffective disorder, alcohol abuse and drug abuse. However, the most recent progress notes indicate he is actually doing quite well on his medication." (Tr. at 133.)

abuse." (Tr. at 27-29, 108, 138.)[6]   The ALJ also specifically relied on the physical consultative examination by Elaine Staton, reflecting that during the examination, Plaintiff "admitted his mental health symptoms were generally controlled with medications" although he "did experience anxiety the morning of the consultation." (Tr. at 28, 605.)   In short, the Court finds that Plaintiff's treatment records and medical opinion evidence support the ALJ's conclusions, and that the ALJ adequately explained his reliance on the relevant evidence in his decision.  See  Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion.") (emphasis and internal quotation marks omitted).

B.  Daily Activities

Plaintiff next contends that the ALJ mischaracterized Plaintiff's daily activities and improperly relied on Plaintiff's ability to perform those activities as a basis to assess less stringent mental RFC restrictions.   In particular, Plaintiff challenges the ALJ's step three determination that Plaintiff's activities support no more than moderate limitations in all of the "paragraph B" functional areas of the listings.   Specifically, the ALJ found that Plaintiff:

> remains able to care for his personal hygiene independently, ride in a car with others, shop in stores, watch television, and handle finances independently. Further, the claimant was able to answer questions and provide explanations at the hearing without difficulty The performance of these activities necessarily require at least a minimal capacity to recall and use information, relate to others, stay on task at a sustained rate, and maintain well-being. Therefore, the claimant has moderate limitations in all functional areas. Moderate limitations are supported by the claimant's objective diagnoses as noted more fully below, by his ongoing treatment, including therapy and medication, as well as the consistent aspects of his subjective allegations as noted more fully below.

---

[6] This is consistent with Plaintiff's testimony at the hearing, noting that he "was doing fine" and "was doing pretty good" until he switched providers and was taken off of his medications and had to begin the process of re-adjusting medications with a new clinic.  (Tr. at 62, 53.)

(Tr. at 24.) The ALJ's discussion at later steps at the analysis included additional findings regarding Plaintiff's daily activities, specifically:

> He manages his own affairs and activities of daily living. He can read and write and studies the bible consistently. He is able to communicate effectively, maintains relationships with his family and a significant other and manages his own medical treatment although he is not always compliant.

(Tr. at 30.)[7] Plaintiff further challenges the mental RFC limitations assessed by the ALJ based on his earlier, moderate findings. (Pl.'s Br. at 10-11.)

Plaintiff's argument fails to acknowledge that the ALJ gave great weight to the findings of the State agency psychological consultants, Dr. Cruise and Dr. Berkowitz, in making the above determinations. (Tr. at 27.) After completing a thorough review of Plaintiff's medical records, neither Dr. Cruise nor Dr. Berkowitz found that Plaintiff had more than moderate mental limitations in any of the four relevant functional areas. (Tr. at 108, 131.)[8] Moreover, despite finding Plaintiff moderately limited in understanding, remembering, and carrying out detailed instructions and moderately limited in maintaining attention and concentration for extended periods, both consultants noted that Plaintiff has a history of production work roles

---

[7] With respect to the "significant other" referenced there, Plaintiff testified at the hearing that he had been in a relationship with his girlfriend for two-and-a-half years, that she was currently pregnant, and that she had driven him from Greensboro to Fayetteville that day for the hearing. (Tr. at 39, 51.) With respect to his Bible studies, he testified that he had started a weekly Bible study with other people from his church. (Tr. at 52.)

[8] Because the SSA revised its listings and related forms between Dr. Cruise's evaluation in November 2016 and Dr. Berkowitz's evaluation in February 2017, the functional areas considered vary slightly. Dr. Cruise found Plaintiff mildly restricted in activities of daily living and moderately limited in maintaining social functioning and maintaining concentration, persistence, or pace. She also found insufficient evidence that Plaintiff experienced repeated episodes of decompensation, each of extended duration, during the time period at issue. (Tr. at 108.) Dr. Berkowitz, in turn, found Plaintiff mildly limited in his ability to understand, remember, or apply information, and moderately limited in his abilities to interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself. (Tr. at 131.) Nevertheless, neither consultant found Plaintiff more than moderately limited in any of these areas based on a thorough review of all of the available evidence.

and "is able to concentrate/persist when he is taking medication as he is doing at this time." (Tr. at 112-13, 137.) The consultants further determined that Plaintiff remained capable of "function[ing] in areas not requiring frequent interaction" with the public and co-workers despite his moderate social limitations. (Tr. at 113, 138.) Neither consultant found that Plaintiff had any adaptive limitation. (Tr. at 113, 138.)

The ALJ found the consultants' opinions "consistent with the medical record of evidence as a whole" (Tr. at 27) and adopted their findings in assessing Plaintiff's mental RFC (Tr. at 25). Specifically, as set out above, the ALJ found Plaintiff "limited to simple, routine repetitive tasks and simple work-related decisions, but not at a production rate pace." (Tr. at 25.) The ALJ further found Plaintiff "limited to only occasional contact with supervisors and coworkers," "no interaction with the public," and "only occasional[] changes in the workplace setting." (Tr. at 25.) This is consistent with the prior 2015 denial, which similarly found:

> In activities of daily living, the claimant has moderate restriction. Despite his mental symptoms, he has been able to drive a moped and care for his own personal needs unassisted. Moreover, Disability Determination Services (DDS) psychiatrists, Sharon Skoll, Ph.D. and Jonathan Mayhew, Ph.D., concluded the claimant was moderately limited in this area. Great weight is given to their opinions on the matter, as there is no persuasive evidence received at the hearing level that contradicts this finding.
>
> In social functioning, again, the claimant has moderate difficulties. Certainly, his diagnosed impairments would cause some difficulty in this area. However, the evidence does not reflect an inability to interact with others, as no doctor has noted he has been unable to relate or communicate during treatment. He has also been able to socialize with his family, attend church . . . and cooperate fully during consultative exams, despite meeting the examiners for the first time . . . These factors show less than marked limitation in this area. Moreover, both DDS doctors noted above concluded the claimant was moderately limited in this area. Again, there is no persuasive evidence that contradicts this finding.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The mental symptoms would certainly cause some trouble in this

area. However, the records show his providers have consistently noted unremarkable mental status exam findings, as discussed below. Furthermore, again, both DDS psychiatrists determined the claimant was moderately restricted in this area. There is no persuasive evidence received at the hearing level, including the claimant's testimony, which shows more limitation.

(Tr. at 82). The 2015 denial also included a similar RFC determination, finding Plaintiff capable of simple, routine, repetitive tasks, able to stay on task for 2-hours periods over a typical 8-hour workday, able to work in a "low stress work setting, which is further defined to mean no production-pace or quota-based work", and with occasional interaction with co-workers and supervisors, but no work with the public. (Tr. at 83.) As noted above, Plaintiff did not appeal that decision and specifically noted no intent or request to reopen that decision. The ALJ in the present case relied on that prior decision (Tr. at 27), which provides further support for the RFC determination.

Plaintiff fails to suggest what, if any, additional mental restrictions the record warrants. He also fails to identify what evidence, other than his own discounted testimony and the similarly discounted testimony of his mother, addressed below, supports a finding of functional limitations greater than the moderate restrictions opined by the State agency consultants and adopted by the ALJ. Accordingly, the Court finds no basis for remand.

C. Concentration, Persistence, and Pace

In a related argument, Plaintiff contends that the RFC fails to adequately account for his limitations in concentration, persistence, and pace. As noted above, the ALJ determined at step three of the sequential analysis that Plaintiff has moderate limitations in this functional area. In Mascio, the Fourth Circuit explained that where such limitations are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why

the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently

17

accounted for a Plaintiff s moderate limitations in concentration, persistence, or pace in light

of the ALJ's explanation throughout the administrative decision) (quoting <u>Jones v. Colvin</u>, No.

7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)); <u>see also</u> <u>Sizemore v.</u>

<u>Berryhill</u>, 878 F.3d 72, 80–81 (4th Cir. 2017) (rejecting the plaintiff's argument under <u>Mascio</u>

where the ALJ relied on the opinion of the state agency psychologist that, notwithstanding

moderate limitations in concentration, persistence, and pace, the plaintiff could sustain

attention sufficiently to perform simple, routine, repetitive tasks with additional limitations)

<u>and</u> <u>Shinaberry v. Saul</u>, 952 F.3d 113, 121-22 (4th Cir. 2020) (same, and noting that <u>Mascio</u>

"did not impose a categorical rule that requires an ALJ to always include moderate limitations

in concentration, persistence, or pace as a specific limitation in the RFC").

    In the present case, as in <u>Mascio</u>, the ALJ found moderate limitations in concentration,

persistence, or pace at step three of the sequential analysis. (Tr. at 24.)  Later in the sequential

analysis, the ALJ formulated a mental RFC limiting Plaintiff to "simple, routine repetitive tasks

and simple work-related decisions, but not at a production rate pace."  (Tr. at 25.)  The ALJ

also limited Plaintiff to "only occasional contact with supervisors and coworkers, but no

interaction with the public," and further limited him to "only occasional changes in the

workplace setting."  (Tr. at 25.)

    Plaintiff now argues that, in making his RFC finding, the ALJ did not fully account for

Plaintiff's ability to stay on task in light of his moderate difficulties with concentration,

persistence, or pace.  Accordingly, Plaintiff contends that the ALJ failed to "build an accurate

and logical bridge from [that] evidence to his conclusion" so that the Court may afford Plaintiff

meaningful review of the SSA's ultimate findings.  <u>Woods</u>, 888 F.3d at 694 (quoting <u>Monroe</u>

v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)).

However, as set out above, remand is not required under Mascio where the ALJ's discussion of, and reliance on, substantial record evidence adequately explains why the plaintiff's moderate limitation at step three did not translate into any additional RFC restrictions. In this case, the ALJ specifically found that "in light of moderate limitations in all functional areas, the claimant is limited to simple work, no public interaction, occasional contact with supervisors and coworkers, and a job that involves simple work related decisions." (Tr. at 28.) The ALJ expressly relied on the opinions of the State agency psychological consultants in assessing Plaintiff's RFC. (Tr. at 27.) Both consultants found Plaintiff capable of at least the simple, routine, repetitive tasks identified in the ALJ's decision despite his moderate limitations in concentration, persistence, or pace. (Tr. at 108-09, 112-13, 131, 137-38, 138-39.) Specifically, Dr. Cruise found on November 10, 2016 that Plaintiff "is able to concentrate/persist when he is taking medication as he is doing at this time. There are no documented periods of problems in this area lasting at least 12 months. He is abstaining from substance abuse as well." (Tr. at 113.) Dr. Berkowitz reiterated this finding in his assessment on February 13, 2017. (Tr. at 137-38.) The consultants further noted that Plaintiff "does well when he takes his medication and abstains from alcohol abuse. He reports that he is no longer abusing substances and is taking his medication." (Tr. at 108.) Although Dr. Berkowitz acknowledged that Plaintiff's symptoms "adversely impact [his] ability [to] persist in some work settings," he determined that the "alleged severity [of Plaintiff's symptoms] is not supported." (Tr. at 139.) The consultant concluded that Plaintiff remained "able to persist at tasks that can be learned in one to three months on the job with

19

reduced contact with others." (Tr. at 139.)[9]

In adopting the mental RFC, the ALJ assigned great weight to the above conclusions of the state agency consultants. (Tr. at 27.) The ALJ further based his assessment of Plaintiff's mental limitations on other record evidence, including Plaintiff's mental health treatment history, daily activities, and the prior ALJ decision, which encompassed earlier opinion evidence and treatment records as discussed above. Most notably, the ALJ found that Plaintiff's mental health treatment records since his June 2016 application date reflected stabilized mood and improvement in Plaintiff's psychiatric symptoms at examinations as a result of effective medications, consistent with the findings of the State agency consultants that he "does well when he takes his medication and abstains from alcohol abuse." (Tr. at 27, 108, 138.) Even so, the ALJ included extensive mental RFC limitations reflecting the record evidence as a whole and his finding of moderate limitations in all "paragraph B" functional areas, as set out above. Overall, the ALJ considered and discussed the record and built a logical bridge between the evidence in the record and the RFC. Therefore, the Court finds no basis for reversal under Mascio.

D. Non-Medical Opinion Evidence

Finally, Plaintiff contends that the ALJ discounted the Third Party Function Report provided by Plaintiff's mother, Evelyn Smith, for "unsupported reasons." (Pl.'s Br. at 13-14.)

---

[9] To the extent Plaintiff may argue that the RFC fails to encapsulate Dr. Berkowitz's opined restriction to "tasks that can be learned in one to three months on the job," any such error is harmless in light of the ALJ's step five determination. The three jobs identified by the ALJ at that step require no more than Specific Vocational Preparation ("SVP") Level 2, which involves "[a]nything beyond short demonstration up to and including 1 month." (Tr. at 30-31) (citing DOT 919.687-014, 1991 WL 687897; DOT 929.687-022, 1991 WL 688172; DOT 754.687-010, 1991 WL 680375).) The restriction opined by Dr. Berkowitz, in contrast, reflects Plaintiff's ability to perform jobs with an SVP level of 3.

The ALJ acknowledged that Ms. Smith's statements regarding Plaintiff's activities and alleged functional limitations "were generally consistent with statements made by [Plaintiff.]" (Tr. at 27-28.) The ALJ also correctly noted that, under the Social Security regulations, statements of family members are categorized as non-medical sources, or "other sources," and, as such, are not entitled to controlling weight. See 20 C.F.R. § 416.913; SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006).[10] The ALJ ultimately assigned "only some weight to Ms. Smith's statements, due to their inconsistency with the objective medical evidence and medical opinions of record." (Tr. at 28.) He also noted that "Ms. Smith does not have the medical training necessary to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms or the frequency or intensity of unusual moods or mannerisms." (Tr. at 28.) In addition, the ALJ found that, "by virtue of her relationship" with Plaintiff, Ms. Smith could not be considered "a disinterested third party witness whose statements would not tend to be colored by affection for [Plaintiff] and a natural tendency to agree with the symptoms and limitations [he] alleges." (Tr. at 28.)

Plaintiff now contends that the ALJ had "no authority to discount [Plaintiff's] mother's statement because she is not medically trained" or "to assume" bias "by virtue of her relationship" with Plaintiff. (Pl.'s Br. at 14.) However, Plaintiff fails to acknowledge that the ALJ's stated, primary reason for assigning Ms. Smith's opinions "only some weight" was "their inconsistency with the objective medical evidence and medical opinions of record." (Tr. at 28.) As set out above, this evidence includes the State agency psychological assessments, from

---

[10] SSR 06-3p has been rescinded, and the rescission is effective for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017). Because Plaintiff's claims were filed before the effective date of the rescission, SSR 06-3p applies here.

which the ALJ adopted Plaintiff's mental RFC limitations, noting improvement in Plaintiff's psychiatric symptoms during the time period at issue due to his increased medication compliance and sobriety. In considering how to weigh Ms. Smith's lay witness statement against contradictory medical evidence and medical opinions, the ALJ appropriately considered Ms. Smith's lack of medical training and her less objective position. To the extent Plaintiff cites to treatment notes as supportive of his mother's statements, those treatment notes date from 2012 to 2013, during the period considered in the previous administrative decision and well before Plaintiff's June 2016 application date. (See Pl.'s Br. at 14-15) (citing Tr. at 513, 519). Moreover, to the extent Plaintiff contends that Ms. Smith's opinions are consistent with Plaintiff's testimony, the ALJ set out his reasons for finding Plaintiff's statements less-than-fully credible in his decision, including Plaintiff's noncompliance with recommended treatment, his daily activities, and unremarkable examination findings. (Tr. at 28-29.) Accordingly, the Court concludes that the ALJ's assignment of "only some weight" to the testimony of Plaintiffs mother was both supported by substantial evidence and adequately explained in the ALJ's decision.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 10th day of February, 2021.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge